IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-190-F

| | |
|---|---|
| RICHARD LOCKOWITZ, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -18] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Richard Lockowitz ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on April 9, 2012, alleging disability beginning September 29, 2011. (R. 22, 127-33). The claim was denied initially and upon reconsideration. (R. 22, 64-82). A hearing before the ALJ was held on January 16, 2014, at which Claimant, represented by counsel, Claimant's wife, and a vocational expert ("VE")

appeared and testified. (R. 22, 37-63). On May 22, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 19-36). On October 23, 2015, the Appeals Council, after considering additional evidence submitted by Claimant, denied Claimant's request for review. (R. 1-8). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

### IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful activity since the alleged onset date. (R. 24). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease of the lumbar spine, liver disease, and obesity, as well as the nonsevere impairment of polysubstance abuse. (R. 24-26). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 25).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform light work[1] with the following limitations: sit, stand and/or walk, in any combination, up to six hours to complete an eight hour workday; lift and/or carry 10 pounds frequently and 20 pounds occasionally; occasionally stoop, kneel or crouch; never crawl or climb ladders, ropes and scaffolds; avoid exposure to workplace hazards such as dangerous machinery and unprotected heights; and requires a sit/stand option, which is specifically defined as the ability to change positions no more than twice in hour while remaining on task. (R. 26-30). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 27). At step four, the ALJ concluded Claimant was unable to perform any past relevant

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

work. (R. 30). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 30-31).

Claimant contends the ALJ erred by (1) failing to appropriately weigh the medical opinion evidence, (2) failing to perform a function-by-function analysis when assessing Claimant's RFC, and (3) failing to cite substantial evidence in support of the credibility determination. Pl.'s Mem. [DE-17] at 7-17.

## V. DISCUSSION

### A.  The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why

5

reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

### 1. The Medical Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. §

6

404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

Claimant contends that the ALJ erred in discounting the opinion of Dr. Rickabaugh, Claimant's treating physician. Pl.'s Mem. [DE-17] at 10-13. Specifically, Claimant argues that the ALJ's stated reasons for not giving controlling weight to Dr. Rickabaugh's opinion are unreasonable or not supported by the record. *Id.* The Commissioner contends that the ALJ correctly evaluated Dr. Rickabaugh's opinion. Def.'s Mem. [DE-19] at 15-16.

Dr. Rickabaugh completed a form medical source statement (R. 386-89) regarding Claimant's physical capacity on July 3, 2013, roughly two years after he began treating Claimant for lower back pain. On January 8, 2014, Dr. Rickabaugh submitted a written narrative statement further discussing the July 3, 2013 medical source statement and providing additional information regarding his opinion of Claimant's physical capacity. (R. 409-11). Dr. Rickabaugh indicated Claimant could adequately perform activities of daily living, but was "very limited" in his ability to do anything more and could not work. (R. 386, 411). Specifically, Dr. Rickabaugh opined that Claimant could never lift or carry 15 pounds, rarely lift or carry 10 pounds, and occasionally lift or

7

carry five pounds; that due to pain and fatigue Claimant would need to lie down or recline for about four hours during an eight-hour work day; that Claimant can sit for less than one hour and stand or walk for less than one hour in an eight-hour work day; that Claimant would require three to four unscheduled breaks daily of 30 minutes each, during which he would be away from the work area; that pain would frequently and stress would occasionally interfere with Claimant's attention and concentration; and that Claimant would be off task more than 30% of the work day and would miss five or more work days each month. (R. 386-89). Dr. Rickabaugh further explained in his narrative statement that the lifting limitation was due to pain and risk of further injury, and for the same reasons Claimant should never stoop, crouch, or bend to pick up objects; that the sitting limitation was to avoid putting pain and pressure on Claimant's back, which exacerbates his symptoms; that Claimant's narcotic medications that he takes for pain cause drowsiness and forgetfulness; that Claimant had been referred for a surgical consultation at his last visit, but was concerned that it may be cost prohibitive; and that he did not expect Claimant's condition to improve due to its degenerative nature. (R. 409-11).

The ALJ summarized Claimant's medical treatment (R. 28) and then weighed Dr. Rickabaugh's opinion, affording it "some weight, but not controlling weight," and explaining as follows:

> Dr. Rickabaugh's January 8, 2014 opinion is granted some weight, but not controlling weight (Exhibit 12F). The portion of his opinion regarding the nature and type of the claimant's physical impairments is consistent with the longitudinal history. However, the portion of his opinion regarding the extent of the claimant's physical functional limitations is not fully consistent with the claimant's treatment records throughout the period in question. For example, the claimant's examination findings and treatment records, discussed above, do not support a finding that the claimant needs to lie down or recline due to his back pain for approximately 4 hours in an 8-hour workday in addition to having 3-4 breaks, 30 minutes each, where he

8

> could lie down or recline. In addition, this opinion is not supported with Dr. Rickabaugh's prognosis noted in the Physical Residual Function Capacity Medical Source Statement (Exhibit 9F). For instance, Dr. Rickabaugh stated that the claimant's prognosis was good for activities of daily living function with medications. The undersigned notes that such overly restrictive limitations on the claimant's abilities to sit and stand, and the amount of time Dr. Rickabaugh stated the claimant needed to lie down, are inconsistent with those of someone with a good prognosis for activities of daily living function with medications. An individual functioning sufficiently independently in their activities of daily living would not appear to need such restrictive sitting/reclining limitations. Dr. Rickabaugh's medical source statement is also not fully consistent with the treating notes indicating negative paresthesias and weakness, normal gait, and normal muscle strength and tone despite complaints of chronic pain. There are references also to effective pain medication (Ex. 6F, pages 9-11 ). Subsequent treating notes include [] some of the same normal and negative findings (Ex. 11F). Moreover, the exertional restrictions in the residual functional capacity adequately account for the claimant's musculoskeletal impairments.

(R. 29). Claimant takes issue with the ALJ's reasoning, arguing that (1) Claimant's good prognosis for performing activities of daily living with medication is not equivalent to performing light work; (2) while there are normal examination findings in the record, there are also abnormal findings; and (3) it is a mischaracterization of the evidence to say that Claimant's pain medication was effective. Pl.'s Mem. [DE-17] at 10-13. Claimant also argues that the ALJ did not reject the lifting restriction found in Dr. Rickabaugh's opinion. *Id.* at 13.

First, the ALJ appropriately considered Claimant's good prognosis for performing activities of daily living, which is relevant to a claimant's RFC. *See* S.S.R. 96-8p, 1996 WL 374184, at *5 (listing "[r]eports of daily activities" as a category of relevant evidence that must be considered in the RFC assessment). The ALJ did not go so far, as Claimant suggests, to equate *per se* activities of daily living with the ability to do light work, but rather considered it as one of several factors. (R. 29). The ALJ's reasoning in this regard goes to the consistency of Dr. Rickabaugh's opinion, which is also appropriately considered under 20 C.F.R. § 404.1527.

9

Next, the ALJ did not rely on normal examination findings to the exclusion of other evidence, such as the treatment notes of Dr. Susan Vettichira. The ALJ acknowledged that Claimant's "[p]hysical examinations routinely reveal back pain on range of motion, slightly reduced strength findings, joint stiffness and anxiety," specifically citing the records of Dr. Vettichira, a specialist who saw Claimant related to his back pain on referral from Dr. Rickabaugh. (R. 28) (citing Ex. 3F (R. 247-86)). The ALJ also acknowledged that positive imaging studies revealed "multilevel spondylosis with moderate to severe neuro-foraminal narrowing, which is greatest at L4-5 and L5-S1" and "[m]ild degenerative changes in the hips[.]" *Id.* However, the ALJ explained that despite Claimant's musculoskeletal impairments, the severe restrictions to which Dr. Rickabaugh opined were not supported by the treatment notes. (R. 29). In discussing the treatment notes, the ALJ explained as follows:

> [Claimant's] physical examination findings generally reveal a well-developed, well-nourished and overweight claimant in no apparent distress. His musculoskeletal findings involved normal gait, full muscle strength in all major muscle groups, normal overall tone and no evident tremor. His mental status examinations have routinely been normal. In addition, treatment records indicate the claimant's medication regimen has been helpful in alleviating his symptoms when taken as prescribed (Exhibit 7F). His most recent physical examination findings continue the longitudinal trend of effective and conservative treatment throughout the period in question (Exhibit 11F). A July 3, 2013 visit revealed stable and non-progressive degenerative disc disease of the lumbar spine with no change to the claimant's then current medication regimen noted (Exhibit 10F/17). As of January 14, 2014, the claimant was seen again for complaints of constant, moderately intense throbbing and aching pain in his lower, left lumbar spine. However, his physical examination findings revealed a stable condition. His medication regimen was continued, and a follow up appointment was scheduled. The claimant was advised to avoid overexertion and reinjury (Exhibit 11F). Such findings and conservative measures further support the undersigned's view that the claimant's treatment regimen has generally been successful throughout the period in question. Although the claimant did not have his previous abilities, the record reveals that he attained a baseline measure of functioning during the relevant time.

(R. 28). It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (E.D.N.C. Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). While some evidence in the record might support Dr. Rickabaugh's opinion, there is more than a "scintilla of evidence" supporting the ALJ's decision to afford it only some weight. *See Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. June 1, 2015) (unpublished) (concluding the ALJ did not err in affording limited weight to a treating source's opinion where "there is more than a 'scintilla of evidence' in the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record.").

Claimant also takes issue with the ALJ's finding that there was evidence of effective pain medication in the record. Claimant focuses on a treatment note cited by the ALJ from April 4, 2012, in which Dr. Rickabaugh noted that Claimant was "[u]nable to get epidural injection done due to low platelet count" and was instructed by Dr. Vettichira to see Dr. Rickabaugh for pain management until he could get the epidural. (R. 29, 354). However, the ALJ also cited Dr. Rickabaugh's treatment note from May 2, 2012, in which he stated that Claimant had effective pain relief with use of oxycodone. (R. 29, 352). Moreover, subsequent treatment notes from August and September of 2012 indicate that Claimant achieved three to four hours of pain relief with oxycodone during the day, but was unable to take it at night and was not sleeping well, so Dr. Rickabaugh added MS Contin, which allowed Claimant to sleep better, but with some continued sleep disturbance for which his dosage was increased to 30 milligrams. (R. 350-51, 378-79). Thereafter, Claimant's medications

11

were maintained by Dr. Rickabaugh and his condition was described as "stable" and "non-progressive." (R. 380-85, 397, 405-08, 415-19); *see Dunn*, 607 F. App'x at 275 ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (unpublished) (finding conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). Claimant also previously received some relief from the epidural injections and physical therapy prescribed by Dr. Vettichira, but had to stop the injections due to liver problems that later resolved, although there is no record of Claimant resuming the injections. (R. 248-66). Claimant also declined Dr. Vettichira's suggestion of a surgical consultation (R. 256), and although Dr. Rickabaugh indicated on January 8, 2014 that he had referred Claimant for a surgical consultation (R. 410-11), there are no records related thereto. The ALJ did not maintain that Claimant's pain medications completely resolved his symptoms, but accurately cited record evidence as to its effectiveness in alleviating his pain and concluded that "[a]lthough the claimant did not have his previous abilities, the record reveals that he attained a baseline measure of functioning during the relevant time." (R. 28).

Finally, Claimant argues that while the ALJ explained the perceived inconsistencies with respect to the limitations Dr. Rickabaugh imposed for sitting, standing, and the need to lie down, she did not state that the lifting restriction he imposed was unsupported. While true, the ALJ was not required to explicitly discuss every restriction suggested by Dr. Rickabaugh, and her failure to do so does not frustrate meaningful review. It is apparent that the ALJ rejected the extreme lifting restriction based on the same reasons she rejected the other limitations—that despite Claimant's back

pain he had a good prognosis for performing activities of daily living with medication; he had other relatively normal examination findings, including normal gait, full muscle strength in all major muscle groups, and normal overall tone; medications were effective in alleviating his pain; and his back pain was stable and non-progressive with conservative treatment. This reading of the ALJ's decision is bolstered by her assessment of the opinion of Dr. Levin, a state agency medical consultant. Dr. Levin determined that Claimant could perform light work with postural limitations. (R. 77-79). The ALJ afforded this opinion limited weight, finding that it was supported by the record at that time, but should be further reduced to include a sit/stand option due to Claimant's continued back pain and subsequent leg pain, fatigue, and unintentional weight gain. (R. 28-29). Therefore, the ALJ did not reject the portion of Dr. Levin's opinion with respect to the lifting restriction commensurate with light work.

The ALJ fully considered Dr. Rickabaugh's opinion, and the reasons given by the ALJ for affording it only some weight are supported by substantial evidence. "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn*, 607 F. App'x at 267. Accordingly, the ALJ did not err is evaluating Dr. Rickabaugh's opinion.

### 2. The Function-By-Function Analysis

In *Mascio v. Colvin*, the Fourth Circuit explained that S.S.R. 96-8p requires the ALJ to "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." 780 F.3d

13

632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ruling further requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p)). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Claimant argues that ALJ failed to conduct the function-by-function analysis with respect to Claimant's ability to lift and that her consideration of Dr. Levin's opinion is insufficient because she gave it limited weight. Pl.'s Mem. [DE-17] at 14-15. For the reasons explained above in the discussion of Dr. Rickabaugh's opinion, the ALJ's omission in this regard does not frustrate meaningful review. The ALJ, after a thorough discussion of Claimant's testimony, the medical records, and the opinion evidence, determined Claimant was capable of lifting at the light exertion level. (R. 27-30). The ALJ did not reject Dr. Levin's assessment that Claimant was capable of lifting at the light exertion level, but rather simply added the limitation of a sit/stand option due to new evidence not considered by Dr. Levin. (R. 28-29, 77-79). Taken as a whole, the ALJ's RFC analysis adequately addresses Claimant's ability to lift and is supported by substantial evidence. *See Berry-Hobbs v. Colvin*, No. 1:15CV01103, 2016 WL 4621080, at *11 (M.D.N.C. Sept. 6, 2016)

(unpublished) (rejecting argument that the failure to conduct a function-by-function assessment frustrated meaningful review, where the ALJ implicitly addressed and adopted the state agency physician's opinion that the Plaintiff could perform light work), *adopted by*, 2016 WL 5922312 (Oct. 11, 2016); *Sineath v. Colvin*, No. 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016) (unpublished) (rejecting argument that the failure to conduct a function-by-function assessment frustrated meaningful review, where the ALJ's RFC "almost mirrors the findings of the state agency consultants" and "in light of evidence that was not seen by the state agency consultants, the ALJ added additional restrictions by providing a sit/stand option in the RFC explaining his reasons for doing so.") (citing *Shore v. Colvin*, No. 1:10CV238, 2013 WL 1320504, at *2 (M.D.N.C. Mar. 29, 2013) (unpublished)). Accordingly, the ALJ's failure to conduct the function-by-function analysis with respect to Claimant's ability to lift does not require remand.

### 3. Credibility

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he

15

must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant argues that although the ALJ acknowledges Claimant had both normal and abnormal examination findings, she relies solely on the normal findings to undermine Claimant's credibility. Pl.'s Mem. [DE-17] 15-16. For the reasons explained above in the discussion of Dr. Rickabaugh's opinion, this argument lacks merit. Furthermore, the ALJ did not completely discredit Claimant's testimony, but rather imposed a restrictive RFC of light work with postural limitations based on the totality of the record.

Claimant also argues that the ALJ's reasoning "puts the cart before the horse" in violation

16

of *Mascio* by stating that Claimant is not credible to the extent he claims he cannot work within the RFC. *Id.* at 16-17. The Fourth Circuit in *Mascio* criticized the use of similar boilerplate language that determined a claimant's RFC before assessing her credibility. 780 F.3d at 639. The ALJ in *Mascio* wrote that "statements by the claimant concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* The Fourth Circuit explained that such language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). However, the Fourth Circuit also recognized that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Id.* Here, the ALJ properly analyzed Claimant's credibility. The ALJ discussed Claimant's testimony, treatment, and the medical opinion evidence. (R. 27-29). As explained above, the ALJ determined that despite Claimant's documented musculoskeletal impairments resulting in back pain, he had a good prognosis for performing activities of daily living with medication, had other relatively normal examination findings, medications were effective in helping to alleviate his pain, and his back pain was stable and non-progressive with conservative treatment. (R. 28). The ALJ properly considered the entire case record in making a credibility finding, and the determination is supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). Accordingly, the ALJ's credibility assessment does not require remand.

17

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 9, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and**

Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the 26th day of January 2017.

                                                Robert B. Jones, Jr.
                                                United States Magistrate Judge